**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDRE ROSSIGNOL,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Civil Action No.: 2:15-cv-00105 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

### I.   INTRODUCTION

Before the Court is Plaintiff Andre Rossignol's ("Plaintiff") appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits and supplemental security income under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed in part, vacated in part, and the matter is remanded for further proceedings consistent with this Opinion.

### II.   BACKGROUND

#### A.   Procedural Background

Plaintiff applied for disability insurance benefits and supplemental security income on April 21, 2011, alleging disability as of February 1, 2009. (Brief in Support of Plaintiff ("Pl. Br."), ECF No. 11 at 1). The application was denied initially and upon reconsideration in September

2011 and April 2012, respectively. (Tr.[1] at 91-93, 97-102). On May 7, 2013, a hearing was held before ALJ Michael L. Lissek, during which Plaintiff's representative amended the alleged disability onset date to January 1, 2011. (Id. at 17, 32). ALJ Lissek issued a decision on August 2, 2013 finding Plaintiff was not disabled, as defined by the SSA. (Id. at 22 (citing 20 CFR §§ 404.1520(g) and 416.920(g))). The Appeals Council denied Plaintiff's request for review of the decision on November 20, 2014. (Id. at 1). On January 6, 2015, Plaintiff instituted this action. (ECF No. 1).

### B. Factual Background

Plaintiff was born on February 29, 1960 in Haiti, where he attended school until the 9th grade.[2] (Tr. at 17, 51). Plaintiff moved to the United States in 1994 and attended night school, where he learned to speak and read English. (Id. at 17). Plaintiff held a number of jobs since arriving in the United States. (Id.) Within the fifteen years prior to his initial application, Plaintiff worked as a machine operator at a steel company from 1996-2000, a hotel maintenance worker from 1998-2001, and a taxi driver from 2001-2011. (Id.) Plaintiff states he stopped working in February 2011 because he developed back pain after sitting for too long and he could not stay awake while driving for more than three or four hours. (Id. at 17, 272).

Plaintiff lives with his wife and four of his six children. (Id. at 273). On a daily basis, Plaintiff does housework, shops, drives his wife to the supermarket and laundromat, watches television, reads books, and socializes with friends and family. (Id. at 15). Plaintiff attends church three times a week. (Id.) In 2011, Plaintiff also reported he periodically travels to Haiti for two

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 8).
[2] Plaintiff testified at the hearing that he finished 9th grade, but states elsewhere in the record that he finished 10th grade, (Tr. at 273, 281), and 11th grade. (Id. at 321).

months at a time. (Id. at 15-20, 280-81, 336).

Plaintiff's initial application alleged disability due to chronic fatigue syndrome ("CFS"), diabetes, depression, arthritis, and hypertension. (Id. at 168). During the hearing, Plaintiff's representative also identified narcolepsy, obstructive sleep apnea, and peripheral neuropathy as the "main factors that [] limit the Plaintiff." (Id. at 33-34).

In 2006, Plaintiff underwent an all-night sleep study with Dr. Jeffrey S. Nahmias at Newark Beth Israel Medical Center after a history of possible sleep apnea and a diagnosis by his rheumatologist with possible CFS. (Id. at 241). Although Dr. Nahmias found there was no evidence of sleep apnea, a multiple latency sleep test confirmed severe daytime somnolence. (Id.) Dr. Nahmias stated "it appears he [is] suffering from narcolepsy," and prescribed Provigil. (Id.)

Plaintiff was referred by Beth Israel Medical Center to Trinitas Hospital for outpatient treatment for depression symptoms, which he attended between November 2007 and August 2009. (Id. at 310-11). He reported depression for about a year, pain from head to lower back, chronic fatigue, and an inability to sit or stand for too long. (Id. at 311). Plaintiff also reported he was having financial issues and problems with his children which were causing him distress. (Id. at 326). Plaintiff's medications at this time were Ambien, for sleep; Enalapril Maleate and Ambodipine Besylate for high blood pressure; and Cyclobenzapine and Tramadol for pain. (Id. at 319). Plaintiff was also prescribed Effexor, an antidepressant, by Trinitas Hospital, which he reported he stopped taking "because it did not work for him." (Id. at 273, 310).

In August 2010, Plaintiff underwent a nocturnal polysomnogram with Dr. Nahmias, who found upper airway resistance syndrome but no obstructive sleep apnea. (Id. at 236). That same month, Dr. Nahmias performed a CPAP/Bi-Level Tritation Study, which demonstrated the CPAP

breathing machine to be a successful treatment. (Id. at 237-38). Dr. Nahmias recommended the regular use of a CPAP. (Id.) In September 2010, Plaintiff reported that the combination of Ambien and the CPAP "helped me so much," and that he felt no fatigue the next day. (Id. at 244).

Plaintiff underwent a neurological exam on January 14, 2011 by Dr. Ying Todd Tao. (Id. at 270). Dr. Tao stated Plaintiff complained of "shaking of his body and hands and also fatigue." (Id. at 269). Dr. Tao's impression was Plaintiff had a tremor, fatigue, and probable peripheral neuropathy. (Id. at 270). Further tests were recommended. (Id.)

On January 21, 2011, Plaintiff went to therapy for pain in his shoulder, but was unable to participate because his heart rate was 116 and his treating physician, Dr. Altschuler, advised the facility to hold therapy if his heartrate was over 100. (Id. at 19, 248). Instead, Plaintiff was sent to the Emergency Department at Trinitas Hospital. (Id. at 249). Plaintiff stayed at the hospital overnight and was released with a recommendation to follow up with his primary care physician. (Id. at 249-54). Plaintiff's medications at this time were Diovan for hypertension, Glipizidse for diabetes, Hydrocodone for pain, and Norvasc for high blood pressure. (Id. at 249).

Dr. Vipin Garg, a specialist in pulmonary and sleep medicine, examined Plaintiff in February and March 2011 and diagnosed him with obstructive sleep apnea. (Id. at 242 -52). In both assessments, Dr. Garg recommended Plaintiff should make efforts to lose weight. (Id.)

After filing for disability insurance benefits and supplemental security income, Plaintiff was referred by the New Jersey Department of Disability Services for a mental status examination to Dr. Ernesto Perdomo in August 2011. (Id. at 272). Plaintiff reported "feelings of sadness, no energy, difficulty sleeping, no desire, no interest, no motivation." (Id.) Dr. Permodo's assessment indicated there was no evidence of any thought disorder or psychosis; Plaintiff's short term

4

memory was fair; long-term memory was good; concentration was fair; association and abstraction ability was concrete; and intelligence was average to low average. (Id. at 274). Dr. Permodo diagnosed Plaintiff with dysthymic disorder and found his "main and dominant problems appear to be medical due to chronic fatigue syndrome. His depression will increase his disability." (Id. at 275).

Dr. Joseph DiLallo performed a medical exam of Plaintiff in September 2011, also at the request of the New Jersey Department of Disability Services. (Id. at 280). The assessment indicated Plaintiff took fourteen different medications on a daily basis.[3] (Id. at 281). Dr. DiLallo stated the quality of control for Plaintiff's diabetes mellitus was "very good," and that his high blood pressure and hypertension were under good control, usually in the 140/80 range. (Id. at 283).

Plaintiff was also examined in September 2011 and April 2012 by two state agency physicians and psychologists, each of whom indicated Plaintiff was not disabled. (Id. at 62, 74).

## III. LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless,

---

[3] These medications were: (1) Meprazole, (2) Lopressor/HCT, (3) Sitaglitin/Metformin, (4) Notriptylin, (5) Provigilo, (6) Tenazepam, (7) Effexor, (8) Hydrocodone, (9) Therobec, (10) Spiriva, (11) Glipizide, (12) Simvastatin, (13) Famotidine, and (14) Cyclobenzaprine. (Tr. at 281).

the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

      **B.**    **Determining Disability**

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or

mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C. Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the Plaintiff has an impairment that limits his ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the

plaintiff can perform. Id.

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n.2.

## IV. DISCUSSION: FIVE STEP ANALYSIS

### A. Step One: Substantial Gainful Activity

At step one, the ALJ determined "the Plaintiff has not engaged in substantial gainful activity since February 1, 2009, the alleged onset date." (Tr. at 14). Although not argued by Plaintiff, this Court finds the ALJ's finding at step one is not supported by substantial evidence. Plaintiff's representative amended the alleged onset date at the hearing to January 1, 2011, stating that because Plaintiff had in fact engaged in substantial gainful activity in 2009 (earning $9,282) and 2010 (earning $12,038) an alleged onset date beginning in 2009 could not be reasonably supported. (Id. at 32, 158) ("I would like to amend the onset date, because Mr. Rossignol had substantial earnings in 2010. It was [] a little over $12,000. So we certainly can see that would preclude finding a disability for that year."). Thus, on remand, the ALJ should reconsider the amendment made by Plaintiff's representative and Plaintiff's employment evidence on the record as it is applicable to his determination at step one.

### B. Step Two: Severe Impairments

At step two, the ALJ determined Plaintiff had the following severe impairments: CFS, diabetes mellitus, osteoarthritis, obstructive sleep apnea, and depression. (Id. at 14). Plaintiff contends this decision is not supported by substantial evidence because it does not acknowledge

8

or discuss Plaintiff's diagnoses of narcolepsy. (Pl. Br. 11; Plaintiff's Statement of Contention Letter Pursuant to Rule 9.1 ("Pl. L."), ECF No. 9). Defendant does not appear to respond to Plaintiff's argument regarding hypertension. Regarding narcolepsy, Defendant contends "the ALJ discussed Plaintiff's alleged narcolepsy throughout the decision," and "the Commissioner notes that nowhere in the record can she discern an actual diagnosis of narcolepsy." (Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Br."), ECF No. 14 at 11). Defendant also states "a mere diagnosis of impairment is insufficient to establish disability," and even assuming Plaintiff did have an impairment due to narcolepsy, the state agency physicians both indicated Plaintiff "had the residual functional capacity to perform a limited range of light work." (Id.)

As Plaintiff points out, the second step of finding a severe impairment is a "'de minimis' test obligating the [Plaintiff] . . . to show that his impairment is not so slight that it could not interfere with the ability to work." (Pl. Br. at 15). Indeed, Social Security Ruling ("SSR") 85-28 explains, "[i]nherent in a finding of a medically not severe impairment . . . is the conclusion that the individual's ability to engage in substantial gainful activity is not seriously affected. *Before this conclusion can be reached however an evaluation of the effects of the impairment* on the person's ability to do basic work activities *must be made*." 1985 SSR LEXIS 19, at *9-10 (Jan. 1, 1985) (emphasis added). Although the ALJ discusses Plaintiff's narcolepsy and hypertension later on in his decision, "[a] determination that [an] impairment is not severe requires a careful evaluation of the medical findings which describe the impairment and an informed judgment about its limiting effects on the individual's physical and mental abilities to perform basic work activities." Id. at *10.

Plaintiff argues "the ALJ was clearly confused as to the difference between obstructive sleep apnea and narcolepsy." (Pl. Br. at 18). The ALJ's discussion in step four indicates that this is not the case, but rather that the ALJ did not find the Plaintiff's diagnosis of narcolepsy to be

9

credible. (Tr. at 18). However, the brief discussion at a subsequent step does not provide substantial evidence to support the ALJ's finding at step two. The ALJ does not fully articulate his determination that narcolepsy is not a severe impairment in his decision.

The Third Circuit requires "[a]n impairment . . . can be found 'not severe' only if the evidence establishes a slight abnormality . . . which ha[s] 'no more than a minimal effect on an individual's ability to work.'" Newell v. Comm'r, 347 F.3d 541, 546 (3d Cir. 2003) (citing SSR 85-28, 1985 SSR LEXIS 19 at *6-7). In this case, the ALJ failed to explain why Plaintiff's hypertension and narcolepsy do not affect Plaintiff's ability to perform work activities. As the ALJ offered no explanation as to why he rejected these diagnoses as severe impairments, this Court cannot offer any meaningful judicial review. See Wilson v. Astrue, No. 08-00007, 2009 U.S. Dist. LEXIS 24326 (W.D. Pa. 2009) (remanding the case because the ALJ failed to "articulate adequately," at step two, his reasons for discounting certain evidence). This Court remands the case to the ALJ to provide an explanation at step two as to narcolepsy and hypertension.

### C.  Step Three: Listed Impairments

At step three, the ALJ determined Plaintiff's impairments were not severe enough to meet, either individually or in combination, any of the impairments in the Listings. (Tr. at 14). The ALJ considered listings 1.02 (major dysfunction of a joint), 3.10 (sleep-related breathing disorders), 9.00 (endocrine disorders), and 12.04 (affective disorders). (Id.) The ALJ provided a brief explanation for why each Listing was not met, discussing Listing 12.04 at length. (Id. at 14-150).

Plaintiff argues that step three is not supported by substantial evidence because the ALJ failed to consider his impairments in combination. (Pl. Br. at 19). Defendant argues the ALJ addressed Plaintiff's narcolepsy throughout his decision, and that the ALJ "specifically discussed

Plaintiff's alleged impairments in combination, and the decision speaks for itself." (Def. Br. at 12). Defendant further argues Plaintiff points to no specific error in the ALJ's step three analysis.

Plaintiff does, however, point to the ALJ's failure to consider CFS and narcolepsy in combination with Plaintiff's other impairments. (Pl. Br. at 22). Plaintiff argues "the decision was ... unaware of a ruling requiring the consideration of [CFS] with the other 'complex of symptoms' and comorbid impairments at step three." (Id. at 22 (citing SSR 99-2p, 1999 SSR LEXIS 3 (Apr. 20, 1999))). Despite Plaintiff's contention, SSR 99-2p *defines* CFS as "a systemic disorder consisting of a complex of symptoms." (Id. at *1). Regarding step three, the ruling simply states that "specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist" and that psychological manifestations of CFS should be considered in the mental disorder listings. (Id. at *12-13).

The decision states the discussion of Listing 12.04 is a consideration of the "severity of the [C]laimant's mental impairments, singly and in combination." (Tr. at 15). However, "[a] blanket statement that an ALJ has considered evidence is not the same thing as an ALJ actually discussing the evidence." Moore v. Comm'r of Soc. Sec., No. 2:11–05369, 2013 WL 941558, at *4 (D.N.J. Mar. 8, 2013). The rest of the step three analysis fails to mention Plaintiff's other impairments, including CFS, and their effect as a whole on Plaintiff's functioning.

When a claimant's individual impairments do not satisfy the specific criteria of the listings, the ALJ is required to assess whether a combination of the impairments is medically equal to a listing. 20 C.F.R. § 404.1526(b)(3). To be medically equivalent, a combination of impairments must be at least equal in severity and duration to a listed impairment. Id. In setting forth his decision, "[t]he ALJ must adequately explain findings on equivalence." McCarthy v. Comm'r of

11

Soc. Sec., No. 95-4534, 1999 U.S. Dist. LEXIS 7551, at *37 (D.N.J. May 19, 1999). In Torres v. Commissioner of Social Security, the Third Circuit found that "[w]hile the ALJ explained why [Plaintiff's] impairments do not meet Appendix 1 listings *individually*, he failed to conduct a proper 20 C.F.R. § 404.1526(b) analysis." 279 F. App'x 149, 152 (3d Cir. 2008). The Court found the ALJ's "entire combination analysis" of "one cursory paragraph" to be inadequate. Id. Similarly, here, although the ALJ addressed Plaintiff's five impairments individually, he did not adequately consider them in combination. As such, this Court cannot provide a meaningful judicial review of his findings regarding medical equivalence. Therefore, the Court remands this case for the ALJ to determine whether the combination of Plaintiff's impairments medically equals one of the listings.

### D. Step Four

At step four, the ALJ determined the Plaintiff had the RFC to perform light work, explained in detail below, and Plaintiff was unable to perform past relevant work.

#### 1. Residual Functioning Capacity

The ALJ determined Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] can occasionally bend, and never climb ladders or scaffolds. He is limited to work not involving driving or exposure to dangerous machinery. In addition, [Plaintiff] must avoid all exposure to temperature extremes, high humidity, and excessive amounts of dust and other known pulmonary irritants. Further, [Plaintiff] is limited to work that can be learned in 1 month or less, involving simple tasks, and not requiring great amounts of decision-making during the workday.

(Tr. at 16-17).

Plaintiff argues this determination is not supported by substantial evidence for three reasons: (1) there is no evidence in the record to support a finding that Plaintiff is capable of lifting

ten to twenty pounds and walking six to eight hours a day; (2) Plaintiff's sleep apnea is eliminated from consideration notwithstanding SSR 82-59; (3) the ALJ recognizes no restrictions caused by CFS, narcolepsy or depression; and (4) the ALJ does not mention that the state agency physicians found that Plaintiff suffers from hypertensive vascular disease. (Pl. Br. at 24-25, Pl. L.). The Court will address each argument in turn.

First, this Court finds the ALJ's determination that Plaintiff is capable of lifting ten to twenty pounds and walking six to eight hours a day is supported by substantial evidence. Pursuant to 20 C.F.R. §§ 404.1529, 416.929, the ALJ must follow a two-part process when considering a claimant's symptoms in making his RFC finding. Initially, the ALJ must determine whether the claimant suffers from an underlying "medically determinable impairment that could reasonably be expected to produce [Plaintiff's] symptoms." 20 C.F.R. §§ 404.1529(b), 416.929(b). Second, the ALJ must "evaluat[e] the intensity and persistence of [Plaintiff's] symptoms . . . and determin[e] the extent to which [those] symptoms limit [Plaintiff's] capacity for work." 20 C.F.R. §§ 404.1529(c), 416.929(c). The Third Circuit has held that "serious consideration" must be given to the claimant's statements about her symptoms. Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981); Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986).

"Allegations of pain and other subjective symptoms must be supported by objective medical evidence." Hartranft, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529). Such an inquiry necessarily requires that the ALJ determine "the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id. (citing 20 C.F.R. § 404.1529(c)). In making such credibility determinations, the ALJ is given great discretion, and his findings are entitled to judicial deference. See generally Holley v. Comm'r of Soc. Sec., 590

F. App'x 167, 169 (3d Cir. 2014) (noting that an ALJ's credibility determinations regarding claimant's statements are entitled to deference); see also Metz v. Fed. Mine Safety & Health Review Comm'n, 532 F. App'x 309, 312 (3d Cir. 2013) ("Overturning an ALJ's credibility determination is an 'extraordinary step,' as credibility determinations are entitled to a great deal of deference.").

Here, the ALJ determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (Tr. at 18). The decision explains even though Plaintiff claims he cannot sit for longer than one to two hours without becoming excessively tired, upon examination by Dr. Dilallo, at the request of the New Jersey Department of Disability Services, Plaintiff "did not present as having any extreme severe chronic fatigue during the history or physical examination." (Id.) Additionally, although Plaintiff reported that he could not walk for longer than four to five blocks without suffering pain, Dr. Dilallo found that Plaintiff had "good pulses, excellent deep venous return and no evidence of large or superficial varicosities and no brawny edema, stasis, dermatitis, or ulceration. He was able to squat and walk on heels and toes very well." (Id.) Regarding Plaintiff's arthritis pain, the ALJ explained that Dr. Dilallo "found no decreased range of motion or deformities of the neck, knees, hips or lower back; and he had no extreme significant tenderness, swelling, heat or evidence of inflammation." (Id. at 19). Additionally, the ALJ relied upon two state agency physicians who opined in September 2011 and April 2012 that Plaintiff could lift ten to twenty-five pounds and walk for six hours in an eight-hour workday. (Id. at 20).

The Court finds that the medical evidence provides substantial support for the ALJ's determination that Plaintiff is able to lift ten to twenty-five pounds and walk six hours in an eight-

hour workday. The ALJ is not required to "make specific, written findings on dozens of individual work function categories . . . . In his or her written opinion, the ALJ need only articulate how the evidence in the record supports the [RFC] determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." Bencivengo v. Comm'r of Soc. Sec., 2000 U.S. App. LEXIS 38785, at *6 (3d Cir. Dec. 7, 2000). In this case, the ALJ explained he did not find Plaintiff's reports wholly credible, and relied instead on the reports of Dr. Dilallo and the state agency physicians.

Second, Plaintiff's argument that the ALJ's elimination of sleep apnea from consideration was not supported by substantial evidence is unavailing. Plaintiff argues SSR 82-59, which provides an analysis of justifiable causes for failure to follow prescribed treatment, requires the ALJ to give full consideration to Plaintiff's sleep apnea despite the fact that Plaintiff did not use the CPAP machine, the prescribed treatment. (Pl. L. (citing SSR 82-59, 1982 LEXIS 25 (April 20, 1980)). However, "that ruling applies only when, unlike this case, the Commissioner has found that Plaintiff would otherwise be disabled, but does not grant benefits because a claimant has refused to follow a proscribed treatment expected to restore the claimant's ability to work." Bowers v. Colvin, 2014 U.S. Dist. LEXIS 87493, at *22 (D.N.J. June 27, 2014) (citing Lozada v. Barnhart, 331 F. Supp. 2d 325, 340 (E.D. Pa. 2004) ("[B]ecause the ALJ found that Plaintiff does not have a disabling impairment, Ruling 82-59 is not applicable here.")).

In Vega v. Commissioner of Social Security, the Third Circuit found SSR 82-59 to be inapplicable explaining, "it was not [Plaintiff's] noncompliance with her treatment that was the basis for the denial of benefits; rather, it was her [RFC] to return to sedentary work." 358 F. App'x 372, 375 (3d Cir. 2009). The Court continued, "[v]iewed in the context of the ALJ's finding as a

whole, his reference to [Plaintiff's] noncompliance shows that he treated it as a factor in analyzing the credibility of [Plaintiff's] testimony." Id. The Court concluded, "[b]ecause an ALJ may consider a claimant less credible if the individual fails to follow the prescribed treatment plan without good reason, this was not improper." Id. (citing SSR 96-7p, 1996 SSR LEXIS 4).

Similarly, in this case, the ALJ referenced Plaintiff's noncompliance with his prescribed treatment of the CPAP machine treatment for his obstructive sleep apnea in the context of the ALJ's analysis of Plaintiff's credibility. (Tr. at 18-19). The ALJ concluded Plaintiff was not disabled based upon his assessment that Plaintiff's RFC allowed him to return to light work. (Id. at 16-20). Therefore, this Court finds the ALJ's consideration of Plaintiff's noncompliance with the CPAP treatment was proper in his analysis of Plaintiff's credibility. See Vega, 358 F. App'x at 372. Further, SSR 82-59 is not applicable because the ALJ did not find Plaintiff would otherwise be disabled aside from his noncompliance with the obstructive sleep apnea treatment. See Bowers, 2014 U.S. Dist. LEXIS 87493, at *22.

Next, the Court finds the ALJ's determination that Plaintiff is not limited by narcolepsy is supported by substantial evidence, but the ALJ's dismissal of CFS and depression without explanation is not. As to narcolepsy, the ALJ stated he does not find Plaintiff's complaints regarding daytime fatigue to be credible, as this is contradictory to Plaintiff's hearing testimony in September 2010 that the CPAP "helped me so much" and that he did not feel fatigue the next day. (Tr. at 18). The ALJ also noted Plaintiff "denied sleep attacks, cataplexy, sleep paralysis or hypnagogic hallucinations," and that he "suffers from several ailments that have fatigue as a symptom." (Id. at 18-19). As such, the ALJ's finding that Plaintiff's alleged narcolepsy does not limit his ability to work is supported by substantial evidence.

16

Regarding CFS and depression, however, the ALJ does not discuss how these diagnoses affect Plaintiff's RFC. The ALJ noted Plaintiff was diagnosed with CFS in September 2011 and July 2012; and that Plaintiff was treated for depression from 2007-2009; and Plaintiff was diagnosed with dysthymic disorder in August 2011 and depression in September 2011. (Tr. at 18-20). The ALJ, however, appears to dismiss these diagnoses based on Plaintiff's trip to Haiti, stating that Plaintiff "reported he generally enjoyed life and traveled periodically to Haiti for 2-month long vacations, most recently in February 2011." (Tr. 20). The ALJ does not provide any other explanation, apart from Plaintiff's trip to Haiti, for the rejection of the multiple diagnoses of depression or CFS. Without such explanation, this Court cannot provide a meaningful judicial review of the ALJ's decision that CFS and depression do not affect Plaintiff's RFC. Therefore, on remand, the ALJ should provide a more detailed explanation for the rejection of Plaintiff's diagnoses of CFS and depression and the effect of these impairments on Plaintiff's RFC.

Lastly, this Court finds the ALJ dismissed medical evidence of Plaintiff's hypertension without sufficient analysis as to whether this impairment affected his RFC. The ALJ stated he afforded the opinions of the state agency physicians "great weight," and accepted many of their findings. (Tr. 20). Although both state agency physicians diagnosed Plaintiff with hypertensive cardiovascular disease, the ALJ did not sufficiently explain or conclude how Plaintiff's hypertension affected his RFC. (Id. at 19). See Wilson, 2009 U.S. Dist. LEXIS 24326, at *40 ("An administrative law judge cannot pick and choose parts of a physician's opinion without providing specific reasons for rejecting other parts.") (citing Fetters v. Astrue, No. 07-256J, 2009 U.S. Dist. LEXIS 18346, at *10-11 (W.D. Pa. Mar. 11, 2009); Ward-White v. Astrue, No. S-07-1616 GGH, 2009 U.S. Dist. LEXIS 18088, at *20 (E.D. Ca. Mar. 10, 2009)). This lack of analysis

17

precludes the opportunity for this Court to provide meaningful judicial review. On remand, the ALJ should discuss Plaintiff's hypertension and its effect on Plaintiff's RFC.

### 2. Relevant Past Work

The ALJ determined Plaintiff was unable to perform any past work, explaining each of Plaintiff's prior occupations required medium exertion, while Plaintiff's RFC indicated he can perform only light work. (Id. at 16, 21).

### E. Step Five: Adjustment to Other Work

At step five, the ALJ posed two hypothetical questions to a vocational expert ("VE") regarding Plaintiff's ability to adjust to other work considering Plaintiff's RFC, age, education and work experience. (Id. at 21). The ALJ determined, "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id. at 21). The ALJ found Plaintiff can perform the job of inspector/packer, labeler, and sealing machine operator. (Id. at 22).

Plaintiff argues (1) the ALJ failed to construct a hypothetical which reasonably conveyed the extent of Plaintiff's mental limitations; and (2) that the Dictionary of Occupational Titles descriptions of the positions the VE determined Plaintiff was capable of performing are inconsistent with Plaintiff's RFC. (Pl. Br. at 29-30).

The ALJ posed two hypothetical questions to the vocational expert. (Tr. at 223-24). First, the ALJ proposed a hypothetical individual

> can do a job that does not involve driving or working around heavy or dangerous machinery. He can do work that does not involve contact with extremes in temperature, high humidity or excessive amounts of dust or known pulmonary irritants. He can bend occasionally and cannot climb ladders or scaffolds. He is limited to work that can be learned in 1 month or less and that involves simple instructions. He can do jobs that do not require great amounts of decision making

18

during the day.

(Tr. at 223). Relying on this hypothetical, the VE determined there was work existing in significant numbers in the national and regional economies that Plaintiff could perform.

Next, the ALJ asked the VE to assume the same limitations as the first hypothetical and to also consider the additional limitation: "[b]ased on excessive daytime sleepiness [the hypothetical individual] is unable to keep a regular work schedule without an unreasonable number of unscheduled absences totaling more than 4 times per month." (Id. at 224). With this limitation, the VE found Plaintiff would be unable to perform work available in significant numbers in the national and regional economies due to the fact that "absences of that frequency are beyond a reasonable standard." (Id.)

An ALJ's hypothetical questions "must reflect all of a claimant's impairments that are supported by the record." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987). If the hypothetical question does not include "medically undisputed evidence of specific impairments" in the record, then "the expert's response is not considered substantial evidence." Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (citing Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). In his opinion, the ALJ stated that evidence on the record "demonstrates continued symptoms of body aches, fatigue, daytime somnolence, and difficulties with memory and concentration." (Tr. 20). Although an ALJ is not required "to submit to the vocational expert every impairment *alleged* by a claimant," Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005), the ALJ already noted the evidence demonstrated symptoms of excessive sleepiness. Therefore, the first hypothetical, which did not include Plaintiff's impairment of sleepiness was not supported by the record and the VE's response cannot be considered substantial evidence.

19

Additionally, the ALJ's second hypothetical which did include Plaintiff's daytime sleepiness, asked the VE to consider the effect this impairment would have if it caused Plaintiff to be absent more than four times per month. (Tr. at 224). As the ALJ did not identify evidence on the record which suggested the effect Plaintiff's sleepiness would have on his absences per month, meaningful review is precluded. Therefore, the decision must be vacated and this matter remanded for further consideration.[5]

## V.    CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is vacated in part, affirmed in part, and remanded further administrative proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

DATED: December 7, 2016

**CLAIRE C. CECCHI, U.S.D.J.**

---

[5] Plaintiff also argues the VE's opinion is contradictory to the DOT and the RFC provided. (Pl. Br. at 30). Plaintiff contends that although the ALJ provided Plaintiff could not operate dangerous machinery, the VE found him capable of performing occupations which require operating dangerous machinery. Additionally, Plaintiff argues that although the ALJ stated Plaintiff could not be exposed to pulmonary irritants, the VE found Plaintiff was able to perform occupations involving exposure to pulmonary irritants. As the ALJ's decision at step five is vacated and remanded on the grounds provided above, these additional issues are for the ALJ's consideration on remand.